```
┌──────────────────────────────────────┐
│ USDC SDNY                              │
│ DOCUMENT                               │
│ ELECTRONICALLY FILED                   │
│ DOC #: _____                 │
│ DATE FILED: __8/30/18__                │
└──────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT DEREK LURCH, JR.,

                            Plaintiff,

        - against -

POLICE OFFICER JANELYN
LORENZANA, POLICE OFFICER
DOMINICK VITALE (SHIELD NUMBER
21711), and THE CITY OF NEW YORK,

                        Defendants.

**ORDER**

16 Civ. 9343 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Robert Lurch, Jr., brings this action pursuant to 42 U.S.C. § 1983

against the City of New York (the "City") and New York City Police ("NYPD") Officers

Janelyn Lorenzana and Dominick Vitale. (Am. Cmplt. (Dkt. No. 42))  Plaintiff claims that he

was unlawfully arrested in violation of the Fourth Amendment.  (Id. at 6-7)[1]  Defendants have

moved for summary judgment (Def. Mot. (Dkt. No. 55)), arguing that Plaintiff's claim is barred

by a general release Plaintiff signed in connection with the settlement of another claim.  (Def. Br.

(Dkt. No. 58) at 1)  For the reasons stated below, Defendants' motion will be granted.

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Filing system.

## BACKGROUND

### I. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on June 15, 2014, he was standing with a group of individuals in the Crown Heights section of Brooklyn when an "unknown" NYPD officer approached him and asked for identification. (Am. Cmplt. (Dkt. No. 42) at 5)  Plaintiff initially refused, but after the officer again "demanded" Plaintiff's identification, Plaintiff handed it to him. (Id.)  The officer then inquired about an empty Ciroc vodka bottle lying on the ground near the group. (Id.)  Plaintiff told the officer, "'I don't have a clue who[se] bottle it is.'" (Id. at 5, 7)

The officer then searched a database to determine whether there were any active warrants for Plaintiff. (Id. at 5)  Plaintiff heard a radio transmission confirming that there was no active warrant for him, but the officer nonetheless arrested him. (Id.)  According to Plaintiff, the officer "falsified the circumstances surrounding the arrest/seizure," claiming that he had seen Plaintiff holding an open container of alcohol, even though Plaintiff was never in possession of the vodka bottle and the bottle was empty. (Id. at 5-7)

On June 16, 2014, Plaintiff was charged with an open container violation. (Id. at 5-6)  On December 17, 2014, the charge against Plaintiff was dismissed. (Id. at 5)

On December 1, 2016, Plaintiff filed this action against Defendants. (See Cmplt. (Dkt. No. 1))  Plaintiff claims that Defendants' unlawfully arrested him in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. (Am. Cmplt. (Dkt. No. 42) at 6-8)

### II. PLAINTIFF'S PRIOR LAWSUIT AND SETTLEMENT

On September 22, 2015, Plaintiff filed a Personal Injury Claim Form with the New York City Comptroller's Office in connection with a slip and fall at Riker's Island. (Arko

Decl., Ex. A (Personal Injury Claim Form) (Dkt. No. 57-1) at 1)  The Comptroller's Office

assigned Plaintiff's claim claim number 2015P1027634. (See Arko Decl., Ex. D (General

Release) (Dkt. No. 57-4) at 1)  Plaintiff complained that while incarcerated at Riker's Island he

slipped and fell on a wet bathroom floor, and further complained that no sign had been posted

warning of this condition.  (See id. at 2)  Plaintiff was represented in this matter by Nass &

Roper Law, LLP.  (See Arko Decl., Ex. B (Dec. 10, 2015 Nass & Roper Law, LLC Letter) (Dkt.

No. 57-2))

On January 27, 2016, Plaintiff entered into a settlement agreement with the City

of New York concerning Comptroller's Claim Number 2015P1027634, and executed a general

release.  (See Arko Decl., Ex. D (General Release) (Dkt. No. 57-4) at 2)  In pertinent part, the

release reads as follows:

> Robert Lurch . . . as "Releasor", in consideration of the payment of $4,000.00 . . . having
> received independent legal advice in this matter or having voluntarily, knowingly, and
> willingly waived the opportunity to seek legal advice, hereby voluntarily, knowingly,
> and willingly releases and forever discharges the City of New York, and all past and
> present officials, officers . . . [and] employees . . . of the City of New York, and all other
> individually named defendants and/or entities represented and/or indemnified by the City
> of New York, collectively the "RELEASEES", from any and all liability, claims, or
> rights of action alleging a violation of civil rights and any and all claims, causes of action,
> [or] suits . . . known or unknown, at law, in equity, or by administrative regulations,
> which RELEASOR . . . had, now has or hereafter can, shall, or may have . . . against the
> RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that
> occurred through the date of this RELEASE. . . .

(Id. at 1 (emphasis in original))  The release further states that "THE UNDERSIGNED HAS

READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT."  (Id. at 2 (emphasis

in original))

## III.  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants have moved for summary judgment, arguing that Plaintiff's claim is barred by the release he executed on January 27, 2016.[2]  (Def. Br. (Dkt. No. 58) at 2)  Plaintiff has filed an opposition, challenging the validity of the release and its application here.  (See Pltf. Br. (Dkt. No. 62); Pltf. Supp. Br. (Dkt. No. 67))[3]

---

[2]  Defendants have served on Plaintiff the notice to pro se litigants mandated by Local Rule 56.2. (See Local Rule 56.2 Notice (Dkt. No. 59))

[3]  Defendants have moved to strike Plaintiff's May 17, 2018 submission, on the grounds that it constitutes an unauthorized sur-reply.  (See May 22, 2018 Def. Ltr. (Dkt. No. 70) at 1)  Although a pro se litigant is not "absolve[d] from awareness of and adherence to all procedural rules," Guity v. Uniondale Union Free Sch. Dist., No. Civ. 155693 (SJF) (AKT), 2017 WL 9485647, at *7 (E.D.N.Y. Feb. 23, 2017), report and recommendation adopted, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017), "a pro se litigant is entitled to 'special solicitude[.]'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted).  Accordingly, courts often consider a pro se litigant's unauthorized sur-reply.  See, e.g., Youmans v. City of New York, 14 F. Supp. 3d 357, 360 (S.D.N.Y. 2014) ("Plaintiff's Surreply was neither contemplated by the Court's July 2, 2012 Scheduling Order, nor submitted with prior approval pursuant to the Court's individual rules of practice.  However, the Court will nonetheless consider Plaintiff's Sur-reply submission, to the extent that it pertains to allegations present in his [Second Amended Complaint], in accordance with the special solicitude afforded pro se plaintiffs." (citations omitted)); Munoz-Nagel v. Guess, Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *1 (S.D.N.Y. Apr. 30, 2013) ("Although this Court's individual rules require a party to obtain the Court's permission prior to the filing of a surreply, see Individual Rule 2.B.i., in light of Plaintiff's pro se status, the Court will accept this filing and consider it to the extent that it is relevant."); Spencer v. Bellevue Hosp., No. 11 Civ. 7149 (CM), 2012 WL 1267886, at *3 n. 2 (S.D.N.Y. Apr. 12, 2012) ("Because [plaintiff] is pro se, and because consideration of her sur-reply does not alter the Court's analysis, I will treat it as part of [plaintiff's] opposition to Defendants' motion.).

Because the exhibits attached to Plaintiff's sur-reply assist the Court in assessing Plaintiff's arguments concerning the validity of the release, this Court will consider Plaintiff's sur-reply. See Lytle v. JPMorgan Chase, No. 08 Civ. 9503 (DAB) (JLC), 2012 WL 393008, at *24 (S.D.N.Y. Feb. 8, 2012) ("Lytle does not counter this evidence in his opposition papers but in the Supplemental Papers dated July 21, 2011, after [defendant] had submitted its reply papers.  The Court need not consider Lytle's Supplemental Papers, which function as an unauthorized sur-reply. . . . However, because any distinction between [defendant's] treatment of Lytle and other employees who also failed to affirm the Code of Conduct is essential to his termination claim, I will consider Lytle's Supplemental Papers as they relate to Donna Williams and will do so to demonstrate that a consideration of Lytle's unauthorized sur-reply, even when viewed in the light

**DISCUSSION**

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). To survive a motion for summary judgment, however, a plaintiff "must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "Mere conclusory statements, conjecture or speculation" by the plaintiff will not defeat a summary judgment motion. Gross v. Nat'l Broad. Co., Inc., 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

---

most favorable to him, does not raise a triable issue of fact."), report and recommendation adopted, 2012 WL 1079964 (S.D.N.Y. Mar. 30, 2012). Accordingly, Defendants' motion to strike Plaintiff's sur-reply will be denied.

"Although the same standards apply when a <u>pro se</u> litigant is involved, 'the <u>pro se</u> litigant should be given special latitude in responding to a summary judgment motion.'. . . [T]he Court must liberally construe the claims of a <u>pro se</u> litigant." <u>Brown v. Selwin</u>, 250 F. Supp. 2d 299, 306-07 (S.D.N.Y. 1999) (quoting <u>Shepherd v. Fraisher</u>, No. 96 Civ. 3283 (JGK), 1999 WL 713839, at *2 (S.D.N.Y. Sept. 14, 1999) (citation omitted)).

## II.   ENFORCEABILITY OF A GENERAL RELEASE

"Settlement agreements and releases are construed according to the general principles of contract law." <u>Roberts v. Doe 1</u>, No. 14 Civ. 9174 (AJP), 2015 WL 670180, at *4 (S.D.N.Y. Feb. 17, 2015) (citing, <u>inter alia</u>, <u>Collins v. Harris-Bode</u>, 303 F.3d 429, 433 (2d Cir. 2002); <u>Albany Sav. Bank FSB v. Halpin</u>, 117 F.3d 669, 672 (2d Cir. 1997)). "'Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced.'" <u>Id.</u> (quoting <u>Pampillonia v. RJR Nabisco, Inc.</u>, 138 F.3d 459, 463 (2d Cir. 1998)). "The proper interpretation of an unambiguous contract is a question of law for the court," which "may properly be resolved by summary judgment." <u>Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582</u>, 305 F.3d 82, 85 (2d Cir. 2002) (internal quotation marks and citation omitted). "In the context of summary judgment, 'a general release stands absent duress, illegality, fraud, or mutual mistake.'" <u>Whittington v. Woods</u>, No. 13 Civ. 8535 (LTS) (RLE), 2016 WL 844830, at *2 (quoting <u>Ford v. Fourth Lenox Terrace</u>, No. 09 Civ. 2660, 2011 WL 2848654, at *5 (S.D.N.Y. July 18, 2011)).

General releases, as opposed to "releases with a narrower scope," bar all claims arising prior to the execution of the release, not simply those that were alleged in a pre-existing action. <u>Arzu v. City of New York</u>, No. 13 Civ. 5980 (RA), 2015 WL 4635602, at *4 (S.D.N.Y. Aug. 3, 2015) (holding that general release barred plaintiff's claims against the City and

individual officers regarding events that occurred prior to the date of the release).  Moreover, a

general release is operative "'not only as to all controversies and causes of action between the

releasor and releasees which had, by that time, actually ripened into litigation, but to all such

issues which might then have been adjudicated as a result of pre-existent controversies.'"

Muhammad v. Schriro, No. 13 Civ. 1962 (PKC), 2014 WL 4652564, at *4 (S.D.N.Y. Sept. 18,

2014) (quoting A.A. Truck Renting Corp. v. Navistar, Inc., 81 A.D.3d 674, 675 (2nd Dept.

2011)).

III.    **ANALYSIS**

      Here, the General Release – executed by Plaintiff on January 27, 2016 – expressly

provides that Plaintiff "releases and forever discharges the City of New York . . . [and]

employees . . . of the City" from "any and all liability, claims, or rights of action alleging a

violation of civil rights and any and all claims, causes of action, [or] suits. . . known or

unknown" that Plaintiff "had, now has . . . or may have" for any matter "that occurred through

the date of this RELEASE." (Arko Decl., Ex. D (General Release) (Dkt. No. 57-4) at 1)  This

language unambiguously precludes Plaintiff from bringing suit against the City or its employees

for civil rights claims that accrued before January 27, 2016.  (See id. at 1-2; Stephens v. Barnes,

16 Civ. No. 7133 (LGS), 2018 WL 618454, at *3 (S.D.N.Y. Jan. 25, 2018) (holding that

identical language "unequivocally bars Plaintiff from suing Defendants, all of whom are New

York City officials, under § 1983 for alleged violations of his constitutional rights that occurred

before January 27, 2017, the date that the General Release was signed"); Muhammad, 2014 WL

4652564, at *5 (holding that identical language is "unambiguous" and "bars all claims arising

out of past events")).  Because the events underlying Plaintiff's civil rights claim in the instant

case occurred on June 15, 2014 – more than a year and a half before Plaintiff signed the general

release – Plaintiff released that claim, and is therefore barred from asserting that claim against Defendants.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff contends that he did not understand the release to extend to "state law claims or federal causes of action that were not pending against [the City] at the time the release was signed." (Pltf. Br. (Dkt. No. 62) at 3) It is well settled, however, that "'[t]he best evidence of what parties to a written agreement intend is what they say in their writing,' and the writing here plainly releases any and all claims as of a certain date, regardless of either party's knowledge of the possible existence of any other claims." Lloyd v. City of New York, No. 15 Civ. 8539 (RJS), 2017 WL 2266876, at *3 (S.D.N.Y. May 22, 2017) (citations omitted). Moreover, "[w]ith unambiguous contracts, a party's subjective intent and understanding of the terms is irrelevant." HOP Energy, L.L.C. v. Local 553 Pension Fund, 678 F.3d 158, 162 (2d Cir. 2012).

Plaintiff further contends that on December 30, 2017 – about two years after he executed the general release – he submitted a written request to the New York City Comptroller to amend the release.[4] (Pltf. Br. (Dkt. No. 62) at 4; Pltf. Supp. Br., Ex. A (Dec. 30, 2017 Request to Amend) (Dkt. No. 67) at 4-6) According to Plaintiff, the City disregarded his request. (Pltf. Br. (Dkt. No. 62) at 4)

---

[4] In Plaintiff's December 30, 2017 letter to the Comptroller, Plaintiff states that he was not informed by his lawyer that by signing the release he would be settling "all claims that are currently outstanding (currently pending) against the City of New York." (See Pltf. Supp. Br., Ex. A (Dec. 30, 2017 Request to Amend) (Dkt. No. 67) at 5) Plaintiff also asserts that the language of the release is ambiguous. (Id.) Plaintiff further states that because the release "is not clear on its face[,] . . . the Plaintiff is writing this office requesting that he be provided with a release that is unequivocal and not open to different interpretations. Until then the Plaintiff will contest any stipulation[] that is included in the release that is ambiguous and can be read to cover matters that both parties never agreed for it to cover." (Id. at 6)

Plaintiff's request to modify the release is of no legal significance here. Plaintiff cannot unilaterally alter the terms of an unambiguous general release by simply submitting a written request to amend its terms. To the contrary, "[u]nder New York law, a court must give full effect to unambiguous contract terms," and "[e]xtrinsic evidence cannot be used to vary the terms of a facially unambiguous contract." HOP Energy, L.L.C., 678 F.3d at 162.

Plaintiff also notes that the general release provides that "[t]his RELEASE may not be changed orally." (Pltf. Br. (Dkt. No. 62) at 4 (emphasis in original); see also Arko Decl., Ex. D (General Release) (Dkt. No. 57-4) at 1) While this language suggests that the release may be changed in writing, nothing in the release suggests that a change can be effected by Plaintiff's unilateral request.

Finally, Plaintiff argues that the release was procured by fraud or duress and is therefore unenforceable. According to Plaintiff, his attorney did not inform him that – in executing the general release – Plaintiff was releasing all then-existing open claims against the City and its employees, including claims that were not currently pending in court proceedings at the time he signed the release. (Pltf. Br. (Dkt. No. 62) at 4-5) The record explicitly contradicts Plaintiff's allegations of fraud and duress, however.

On September 10, 2015 – four months before Plaintiff executed the general release – his lawyer explained in writing that the City was seeking a general release that would settle all claims then outstanding:

## WARNING:  MUST READ CAREFULLY!!

The City of NY provides us a general release. That means, it will settle ALL claims that are currently outstanding. Therefore, if you currently have any other outstanding claims open against the City of New York or any of its employees/agents you MUST list them so that we can obtain a release for you that excludes your other open claims so that you do not unintentionally settle them. We are doing this to protect your rights. We will

NOT use this information for any other purposes other than to exclude them from this settlement.

(Pltf. Supp. Br., Ex. B (September 10, 2015 Nass Letter) (Dkt. No. 67) at 12 (emphasis in original))  The letter went on to request that "[s]hould you <u>not</u> have any other open claims, please sign here and notarize below:"  (Id.)  Plaintiff signed the letter and had his signature notarized. (Id.)

Plaintiff contends that he understood from his lawyer's letter that the general release would settle only claims against the City and its employees that were currently pending. (See Pltf. Br. (Dkt. No. 62) at 5; Pltf. Supp. Br. (Dkt. No. 67) at 2)  That is not a reasonable reading of the lawyer's warning, however, which emphasizes that Plaintiff's execution of a general release will "settle ALL claims that are currently outstanding."  (Pltf. Supp. Br., Ex. B (September 10, 2015 Nass Letter) (Dkt. No. 67) at 12 (emphasis in original))  Moreover, the lawyer's warning reflects the language of the general release itself – which Plaintiff represented, in signing the general release, that he had read and understood (see Arko Decl., Ex. D (General Release) (Dkt. No. 57-4) (General Release) (Dkt. No. 57-4) at 2) – stating that Plaintiff was releasing "any and all claims . . . RELEASOR . . . had, now has or hereafter can, shall, or may have . . . against the RELEASEES . . . through the date of this RELEASE."  (Id. at 1 (emphasis in original))

Plaintiff bears the burden of establishing that "there has been fraud, duress, or some other fact which will be sufficient to void the release."  <u>Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.</u>, 17 N.Y.3d 269, 276 (2011) ("Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release 'shifts the burden of going forward . . . to the [plaintiff] to show that there has been fraud, duress or some

other fact which will be sufficient to void the release.'" (alteration in original) (citations omitted)).

"'In general, repudiation of an agreement on the ground that it was procured by duress requires a showing of both a wrongful threat and the effect of precluding the exercise of free will.'" Cocuzza v. Falco, No. 16 Civ. 9868 (VB), 2017 WL 3207812, at *4 (S.D.N.Y. July 27, 2017) (quoting United States v. Twenty Miljam-350 IED Jammers, 669 F.3d 78, 88 (2d Cir. 2011)). "'[T]he duress at issue must have originated from the defendant.'" Lamberti v. Motorola Sols., Inc., No. 12 Civ. 2472 (PGG), 2014 WL 1224501, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting Mandavia v. Columbia Univ., 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012)), aff'd, 604 F. App'x 64 (2d Cir. 2015). Moreover, "'the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so.'" Cocuzza, 2017 WL 3207812, at *4 (citations omitted).

Here, Plaintiff's duress claim fails for multiple reasons. As an initial matter, Plaintiff has offered no evidence whatsoever that the Defendants threatened or coerced him to sign the general release. The absence of such evidence is fatal to his duress claim. See Kramer v. Vendome Grp. LLC, No. 11 Civ. 5245 (RJS), 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012) ("Critically, to prove duress, a plaintiff must demonstrate that the difficult circumstances she faces are a result of the defendant's actions." (citations omitted)). Moreover, Plaintiff's assertion that his lawyer did not "adequately explain[]to him the implications of the [r]elease's terms does not fall within the 'causes sufficient to invalidate' the [r]elease." See Muhammad, 2014 WL 4652564, at *5 (citations omitted). Finally, Plaintiff did not promptly repudiate the release. To the contrary, he did not disavow the release until nearly two years after he executed it. (See Pltf. Br. (Dkt. No. 62) at 4; Cocuzza, 2017 WL 3207812, at *4 ("Courts within the

11

Second Circuit have found that periods of time ranging from four to twenty-four months exceeded the 'prompt' repudiation requirement."))

Plaintiff's fraud claim is likewise unpersuasive.  "Proof of fraud under New York law requires a showing that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"  Swinson v. City of New York, No. 12 Civ. 6080 (VB), 2015 WL 873390, at *3 (S.D.N.Y. Feb. 11, 2015) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996)).

Here, Plaintiff's fraud claim "relat[es] solely to the conduct of his own . . . counsel, not any conduct on Defendants' part; his assertion therefore raises at most a claim of legal malpractice, not a basis for avoidance of the General Release." Whittington, 2016 WL 844830, at *2 (plaintiff's argument that his attorney failed to sufficiently explain the consequences of the general release to him did not support a claim for duress or fraud). Moreover, even assuming – contrary to the evidence – that the lawyer had misrepresented the effect of the general release, Plaintiff's reliance on this alleged misrepresentations would not be reasonable in light of the unambiguous language of the release. See Swinson, 2015 WL 873390, at *3 ("The General Release unambiguously states that plaintiff was releasing his claims against the City; the Release does not mention Asher & Associates, or their representation of plaintiff . . . . Thus, plaintiff's reliance on the alleged misrepresentations was unjustified."); Robinson v. Pierce, No. 11 Civ. 5516 (GBD) (AJP), 2012 WL 833221, at *7 (S.D.N.Y. Mar. 13, 2012) ("[A]ssuming arguendo that one of the City's lawyers did misrepresent the scope of the Release, Robinson's reliance would be unreasonable as a matter of law because both the Robinson II

Stipulation and the November 1 Release state in unambiguous terms that Robinson was releasing the City, Pierce and other DOC employees, which includes Christian, from any and all liability from the beginning of the world to the date of the Release, and oral agreements cannot vary the terms of the Stipulations.").

In sum, "[P]laintiff's alleged confusion as to the terms of the [g]eneral [r]elease does not relieve him of his contractual obligations." See Swinson, 2015 WL 873390, at *3. This Court concludes that Plaintiff's claims are barred by the general release.[5]

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment (Dkt. No. 55) is granted, and Defendants' motion to strike Plaintiff's sur-reply (Dkt. No. 70) is denied. Plaintiff's pending motions (Dkt. Nos. 43, 47, 48) are denied as moot. The Clerk is directed to terminate the motions (Dkt. Nos. 43, 47, 48, 55, 70), and to close this case. The Clerk is further directed to send, by certified mail, a copy of this Order to pro se Plaintiff.

This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for purposes of

---

[5] Plaintiff has filed two motions for discovery seeking (1) video footage of his arrest; (2) any vouchered evidence or photos of vouchered evidence; (3) information concerning the cost of a bottle of Grey Goose vodka and what stores in Brooklyn sell Grey Goose vodka; (4) the results of any fingerprint test conducted on the vodka bottle observed at the scene; and (5) any witness statements "that implicated the plaintiff in [open container] crime." (See Dkt. Nos. 43, 47) Given this Court's ruling concerning the effect of the general release, these motions will be denied as moot.

Plaintiff also moved for additional time to submit the Amended Complaint and "final discovery request[s]." (Dkt. No. 48) The Amended Complaint was accepted by this Court, and Plaintiff's request regarding discovery is moot in light of this Court's ruling concerning the general release. Accordingly, this motion will likewise be denied as moot.

13

an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an

appellant demonstrates good faith when he seeks review of a non-frivolous issue).

Dated: New York, New York
      August 30, 2018               SO ORDERED.

Paul G. Gardephe
United States District Judge

14